**DARDENNE v. DANIELS et al.**

No. 25749.   Feb. 18, 1936.

Rehearing Denied April 21, 1936.

(See Dardenne v. Daniels, 101 Okla. 201, 225 P. 152.)

N. E. McNeill, Carey Caldwell, and Robert Payne, for plaintiff in error.

A. Scott Thompson, L. A. Wetzel, D. H. Cotten, A. L. Commons, Paul Bradley, Vern E. Thompson, and E. H. Beauchamp, for defendants in error.

PHELPS, J. There is much discussion of many propositions in this appeal, but after prolonged study of the case we find that it is only necessary to determine whether the order appealed from should be sustained on the doctrine of laches. With that idea in mind, we make the following statement of only the necessary facts in such a way as to give the plaintiff in error. the benefit of every doubt on those issues which are disputed:

On November 4, 1920, the plaintiff (plaintiff in error here) filed suit in the district court against J. A. Daniels, Scott A. Yeargain, J. S. Cheyne, and two other parties, praying that title to certain land previously conveyed by plaintiff be quieted in him, and also setting forth a cause of action in ejectment. The petition was founded on an allegation of inalienability of the land, with no charge of fraud or claim of rescission.

To that petition the defendants answered, pleading title in them under deed executed by the plaintiff after restrictions against the alienation of the land had been removed. The answer also attached authenticated copies of the orders of the Department of the Interior removing the restriction against the alienation and certifying competency of plaintiff to alienate his land and conduct his own business affairs, both of which antedated the deed. No reply was filed by the plaintiff, and thus the new matter alleged in said answer stood admitted by the pleadings.

On March 26, 1921, a stipulation for dismissal and judgment for defendants was filed by the plaintiff and the defendants Scott A. Yeargain and J. S. Cheyne, signed by one of plaintiff's two attorneys. On March 30, 1921, a journal entry of judgment upon said stipulation was filed, dismissing the action with prejudice as to the defendants Yeargain and Cheyne, and decreeing the title to be in said defendants, and quieting their title thereto as against plaintiff. Thereafter, on April 1, 1921, a stipulation was filed by plaintiff personally, and the defendant Daniels personally, agreeing that the action be dismissed with prejudice as to that defendant.

On August 27, 1921, the other attorney of plaintiff returned from absent confinement in a hospital and filed a petition to vacate the above judgment of March 30, 1921 (based on the stipulation), in which it was alleged that the first attorney was not authorized to enter into the stipulation, and that the stipulation of plaintiff with defendant Daniels was obtained by fraud and undue influence. This opinion assumes, for the purpose of reasoning, that said stipulation was obtained by fraud and that the first stipulation was filed without authority. Nevertheless, plaintiff did file the petition to vacate the judgment on August 27, 1921. No reference was made, in that petition, to the original cause of action, and there is no question of inalienability or restriction before us. Thus said petition to vacate, filed August 27, 1921, is the petition which should have been, and was not, prosecuted with diligence. The defendants filed their separate answers to that petition to vacate, in which they alleged that the second attorney knew of the judgment having been entered, and that after its rendition and prior to the filing of petition to vacate, and with full knowledge of the facts, he ratified and affirmed the stipulation by himself filing a motion to correct the name of a coplaintiff and obtaining an order to that effect. No reply was filed by plaintiff to the defendants' answers to the petition to vacate.

On November 24, 1922, the plaintiff was declared incompetent and a guardian was appointed. On February 16, 1923, the plaintiff, by and through his newly appointed guardian, filed a separate and independent suit in equity in the same district court against the same defendants for recovery of the land, wherein he alleged fraud and undue influence in the obtaining of the deed, and also that he was mentally incompetent on the date of the deed by reason of excessive use of alcoholic liquors, and prayed for cancellation of the deed. The petition in that case asked also that it be consolidated with the petition to vacate the judgment in this case. The court sustained a demurrer to the petition, and upon appeal this court

affirmed that judgment, holding that plaintiff could not maintain an independent suit to reach the same end as that sought by the petition to vacate in this action. Dardenne v. Daniels, 101 Okla. 201, 225 P. 152.

Now begins the present controversy. On June 26, 1933, almost twelve years after the filing of the petition to vacate the judgment on the ground of fraud, and more than nine years after this court affirmed the sustaining of the demurrer in the second suit referred to above, plaintiff by his guardian filed a "supplemental petition" herein, asking to set aside the original judgment and to cancel all conveyances made by the original defendants to third parties since the rendition of the original judgment of March 30, 1921. The supplemental petition made all those persons and companies parties defendant who had acquired any interest in the land during the twelve-year period. In the meantime two of the original parties defendant. Cheyne and Yeargain, had died. Thereafter the plaintiff filed a "second supplemental petition" making additional parties defendant, and also an amendment to the first "supplemental petition." The defendants then filed a motion to strike these pleadings, and the trial court sustained that motion. It is this order, striking the supplemental petition, the amendment thereto, and the second supplemental petition, from which the plaintiff appeals. The defendants point out that on September 3, 1923, there was entered in the record of the original case, upon what is called the minute book, an entry to the effect that the motion to vacate the judgment was heard and overruled and the plaintiff allowed an exception. The plaintiff denies that any such ruling was ever made, and contends that the minute was entered on the records through mistake or fraud. For the purpose of this decision we assume (without deciding) that the contentions of the plaintiff in this respect are correct, and that the matter was not in fact adjudicated on September 3, 1923, but that on June 26, 1933, when the plaintiff filed the supplemental petition, the original petition to vacate was still pending.

These facts are outstanding: (1) The plaintiff, and later he and his guardian, permitted his petition to vacate to grow stale in the files of the court for a period of twelve years, the last nine years of said delay having been passed idly by after a reminder from this court in Dardenne v. Daniels, supra, that relief was obtainable under the petition to vacate in the instant case;

(2) during this twelve-year delay two of the original defendants have died, and the contradiction of a large part of the evidence upon which plaintiff bases his claim of fraud would be impossible for the present defendants, due to the deaths of those parties who were important actors in the original transactions; (3) during this unusual delay the intervening rights of a great number of third parties have come into the case. The list of such third parties, who have acquired various kinds of interests, mining and otherwise, covers many pages of the record. The plaintiff says that these third parties are not innocent purchasers due to the fact that they had constructive notice by pendency of suit. Nevertheless, plaintiff's delay has removed from this world two of the witnesses by whom those defendants' defense could possibly have been established. They are not here, to contradict plaintiff's version of the facts from the witness stand. Laches is a delay that works a disadvantage to another. Moore v. Moore, 167 Okla. 365, 29 P. (2d) 961.

The remedy sought by the supplemental petitions is one of equity. Lee v. Terrell, 170 Okla. 310, 40 P. (2d) 10. It is a general rule of law that laches may consist not only in negligently instituting suit, but also in negligently prosecuting it after it has been begun. Tidal Oil Co. v. Hudson, 95 Okla. 209, 219 P. 95; Hagerman v. Bates, 24 Colo. 71, 49 P. 139; U. S. v. Fletcher, 242 Fed. 818. It was said in Johnston v. Standard Mining Co., 148 U. S. 360, 37 L. Ed. 480:

"It has been frequently held that the mere institution of a suit does not of itself relieve a person from the charge of laches, and that if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun."

That case points out that the doctrine is all the more applicable where the property is of fluctuating value. such as mining property, the type involved in the instant case. The Supreme Court of the United States made the following observations in Galliher v. Cadwell, 145 U. S. 368:

"The question of laches turns not simply upon the number of years which have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights. the changes in value, and other circumstances occurring during that lapse of years. The cases are many in which this defense has been invoked and considered. It is true, that by reason of their dif-

ferences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all."

The remark contained in U. S. v. Beebee, 17 Fed. 36, exactly fits this case:

"In my judgment, the doctrine that a court of equity will not entertain a claim so stale as to be not capable of satisfactory proof, must stand as one applicable alike to all suitors; it rests not upon any statute of limitations, nor upon any doctrine of laches alone, although the fact of laches may always appear; it rests rather upon the sound rule that no court should ever entertain a controversy after the ravages of time have destroyed the evidence concerning it."

Similarly pertinent here is the following from Smicks, Adm'r, v. Bezwicks, Adm'r, 113 Ky. 439, 68 S. W. 439:

"Where, from delay, * * * the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties or witnesses, as to render it difficult, if not impossible to do justice, the plaintiff will, by his laches, be precluded from relief, and it is not even necessary that the court should be satisfied that the original claim was unjust or had been satisfied."

In addition to the deaths of two of the most important witnesses and proper parties in this case, the attorney originally representing plaintiff has died, and no attorney representing the plaintiff or any of the defendants prior to June 26, 1933, appears in the present action. The attorney now dead may have been a most important witness for defendants.

In our opinion that is about all that is necessary to be said on this phase of the case. It seems obvious that this was such a delay as, coupled with the facts and circumstances, must necessarily work to the disadvantage of the defendants were they compelled to defend at this late date, when the plaintiff, by his lack of diligence, has taken from them virtually all of their means of defense.

We do not overlook the fact that during the greater part of this twelve-year period of delay the plaintiff was under the legal disability of incompetency. However, he was not under such disability when he instituted the action, and he was not adjudged incompetent until over two years thereafter. The plaintiff was under no legal disability when he, on August 27, 1921, through his proper attorney (not the one who had entered into the stipulation for dismissal and judgment) filed his petition to vacate the judgment. Further, within a few months after he had been adjudged incompetent his guardian filed

the separate suit in equity heretofore referred to,—and in addition to the facts that he was legally competent for a period of nearly four years after the conveyance, and over two years after the action was filed, his guardian and attorney were also familiar with the situation.

By analogy with the statutes of limitations it is generally held that only such disabilities as exist when a right of action first accrues are available to a party, and that after the statute of limitations, or laches, begins to run against one not under a legal disability, subsequent disability does not stop the running thereof. 10 R. C. L. 404; 21 C. J. 239, and cases cited; 17 R. C. L. 878; McDonald v. Hovey, 110 U. S. 619; Piper v. Hoard, 107 N. Y. 67, 13 N. E. 632; Warner v. Hammill, 134 Iowa, 279, 111 N. W. 939.

Plaintiff contends that the defense of laches may not be taken advantage of by a motion to strike the pleadings, and cites Bronson v. Reed, 167 Okla. 447, 30 P. (2d) 459, to that effect. That case is not contrary to the holding herein, for the reason that the motion to strike which was dictated into the record in that case could not be construed as anything but a motion to strike, while in the instant case such is not the situation. We do not treat the motion filed herein as a motion to strike. It is well settled that a pleading need not necessarily be identified by its caption, and that for the purpose of determining the effect of a pleading the courts will look to its substance. There is a considerable portion of the motion which is predicated upon the validity of the minute of the judgment formerly entered in defendants' favor, supposedly upon the strength of the stipulation. Those parts of the motion we disregard, for we stated above that the facts upon which we proceed exclude the validity of that judgment. But other portions of the motion, particularly paragraph 5 thereof, served to put both plaintiff and the court on notice that defendants were relying upon the defense of laches,—it alleged that the files and records in the cause showed plaintiff and his guardian had for a period of ten years failed to assert any claim to the property, that during that time the property was the subject of various sale transactions, and that now to permit an opening, after the deaths of the principal parties and the inexcusable delay and laches of plaintiff and his guardian, constituting clear abandonment, would be unjust, inequitable, and unfair to the defendants, and repulsive to the conscience of a court of equity.

Whether we treat that portion of the mo-

tion as a special demurrer within the purview of the first sentence of section 202, O. S. 1931, or whether we regard it as allegations in answer to the supplemental petitions, the result is the same, and laches may be raised under either of those two forms of pleading. Plaintiff admits the death of Yeargain and Cheyne, and, further, that fact was apparent from the face of the proceedings. The vestment of title, or interests therein, in various third parties was apparent from the face of the two supplemental petitions. The long delay was apparent from the record. Every fact necessary to bring to the attention of the court the need of application of the doctrine of laches was contained in the pleadings and in the court records,—the introduction of evidence was unnecessary. Plaintiff cannot successfully contend that because the pleading was called a motion to strike, instead of being called by some other name, he was thereby misled as to the relief sought. for the motion specifically set forth good and sufficient legal reasons why the court should refuse to entertain the supplemental petitions of plaintiff. The trial court being eminently correct in its application of the doctrine in this case, we should be very slow indeed to reverse the judgment merely because the defendants misnamed their pleading; such result would permit the ascendency of technicalities over substance.

The judgment is affirmed.

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.