ALLEN v. GARMAN.

No. 33265.   Feb. 15, 1949.

*202 P. 2d 1073.*

Robert D. Crowe, of Oklahoma City, for plaintiff in error.

Robinson & Olden, of Altus, and Bledsoe & Nicklas, of Lawton, for defendant in error.

CORN, J.  Plaintiff brought this action to have a trust declared in certain farm land in Jackson county and to require defendant to convey to him a one-half interest therein. The pleadings and the evidence establish the following facts:  In November, 1928, plaintiff owned an apartment house in Oklahoma City carrying a $7,500 first mortgage and a second mortgage of about $3,000. One Thorpe owned the half section of Jackson county land which is the subject of this litigation.  Plaintiff and Thorpe entered into a contract to exchange property, with the understanding the farm land was to be clear and plaintiff's property was to bear only the first mortgage.  Pursuant to such agreement the exchange was made March 29, 1929, and plaintiff received a warranty deed to the Jackson county land.

To discharge the second mortgage against the city property plaintiff needed to mortgage the farm land, but it was impossible to secure a school land loan in his own name.  Plaintiff and defendant agreed the legal title should be placed in defendant and the loan secured in his name, each party to own an undivided one-half interest therein subject to the loan, all expenses on the property to be borne equally.  Pursuant to this agreement the land was conveyed to defendant who secured a $4,000 loan in his own name.  Plaintiff alleged defendant paid no part of the purchase price, and after the deed was given defendant held one-half interest in the property in trust for plaintiff.  It was also alleged that defendant recognized the trust and permitted plaintiff to expend money on improvements until about May, 1941, when defendant asserted entire ownership of the land and refused to reconvey any part of the property. Plaintiff sought judgment decreeing him to be owner of an undivided one-half interest therein and that defendant be required to execute a deed to such interest to plaintiff.

Defendant's answer admitted the allegations relative to acquisition of the land.  However, defendant alleged the exchange between plaintiff and Thorpe was completed December 19, 1928, at which time plaintiff secured a $4,000 loan from the bank to discharge the second mortgage indebtedness, and to secure this loan defendant gave two accommodation notes to plaintiff, one for $5,000 secured by a mortgage upon the farm, and one for $4,000 secured by a mortgage on the Oklahoma City property owned by defendant.  These notes were to be used by plaintiff as collateral, their agreement being that after the transactions were completed the notes were to be returned to defendant, the mortgages released, and the farm then would be owned jointly by the parties.

A $4,000 loan was secured from the School Land Commission, and upon receipt of this payment the parties agreed the two mortgages securing defendant's two accommodation notes were to be released.  The $5,000 mortgage was released, but plaintiff continued to hold and use the $4,000 note as security in certain individual transactions,

without defendant's knowledge or consent. About December 1, 1930, the bank holding this note demanded payment and defendant thus learned that plaintiff had not released this accommodation note. Plaintiff advised defendant he was unable to secure release of the note, and at a conference the bank agreed if defendant would execute a new note for $1,800, secured by a mortgage upon defendant's own property, the $4,000 note would be canceled. The parties agreed plaintiff's interest in the land should stand as security for the new note and if plaintiff failed to discharge this indebtedness within three years from date (December 1, 1930) then defendant was to become owner of the property. Defendant further alleged plaintiff's failure to pay this note and that he had to discharge the obligation, thus becoming owner of the property in question.

Defendant further alleged he had been unable to pay off this note until July, 1935, and after final payment he offered to convey a half interest in the land to plaintiff if he would reimburse defendant on the note, but plaintiff refused this offer and stated he claimed no further interest in the land. Further, that if defendant did not become sole owner under the agreement of December 1, 1930, nevertheless, the agreement of July 1, 1935, set in motion the statute of limitations against any claim of plaintiff. In the alternative defendant claimed a lien upon any interest plaintiff might be found to have to the extent of $1,800 plus interest from December 1, 1930, and asked judgment for foreclosure of such lien.

Plaintiff's reply denied any agreement to convey to defendant, to surrender plaintiff's equitable interest, or that defendant had any right to a lien upon his interest. He further alleged that any purported agreement to convey or surrender an equitable interest in the property, or to give defendant a lien thereon, was within the statute of frauds and void; and, if defendant ever had a lien upon the land the same

was barred by the statute of limitations.

Upon the issues made by the pleadings, the cause was tried to the court. As set forth by the pleadings, the evidence established that plaintiff traded the city property for the farm, title being placed in defendant's name, to hold an undivided one-half interest in trust for plaintiff, and that defendant received his interest in return for extending his credit to plaintiff, enabling plaintiff to retire the second mortgage on the apartment house and complete the transactions heretofore mentioned.

Plaintiff testified to his friendship with defendant and that after securing the farm they shared the expenses and labor of improvements until early in 1936, but that it was 1941 before defendant told plaintiff he no longer considered that plaintiff had any interest in the farm. Plaintiff denied there was any conversation or agreement in November or December of 1930, giving defendant a lien upon the property, or any agreement that he would surrender his equity in the farm to defendant; and plaintiff testified that the first he knew defendant claimed entire ownership was in 1941, when he had a conversation with plaintiff as to the condition of the farm. He further testified that he was not indebted to defendant on the $1,800 note, because this note was really made to pay off an existing mortgage on defendant's own property.

Defendant's testimony established the fact surrounding the transaction as mentioned. He also testified, over plaintiff's objections, that in 1930 the plaintiff agreed if defendant would give him $1,800, he would deed his interest back to defendant and that he executed a new note for this amount, but did not receive any of the proceeds. Defendant also testified that after he paid off this note in July, 1935, he offered to give plaintiff his interest in the property if plaintiff would reimburse him, but plaintiff stated he was no longer interested.

After hearing the testimony the trial court stated that it was clear what the parties intended in acquiring the property and that defendant held one-half interest in trust for plaintiff, but when defendant executed the $1,800 note for plaintiff's credit, and plaintiff having made no effort to pay the obligation, their agreement then was that plaintiff's interest in the property should stand for this debt and when plaintiff did not redeem the property it was his intention to surrender his interest therein. Upon this basis the trial court held that the statute of limitations started running in July, 1935, when defendant finally paid off this note and plaintiff's claim to any interest in the property was barred and he was not entitled to the relief sought, title to the property being quieted in defendant.

The specifications of error upon which plaintiff relies for reversal of this judgment are presented under three propositions. It is first contended that plaintiff's action was for recovery of an interest in realty and was not barred until 15 years after the cause of action arose, and since plaintiff's suit was filed within a lesser time (9 years, 7 months) after the oral agreement of December, 1930, the trial court erred in holding plaintiff's cause of action barred by the statute.

The second contention is that since this was an action to recover an interest in realty held in trust, the statute of limitations could not begin to run until an unequivocal repudiation of the trust was brought home to the cestui que trust.

The argument urged by plaintiff in support of these contentions may be summarized as follows: He contends that under our holding in Dillon v. Helm et ux., 196 Okla. 140, 163 P. 2d 539, it is settled that in an action to recover an interest in realty the 15 years statute of limitations applies. And, that the testimony did not disclose an unequivocal repudiation by defendant of the admitted trust, whereas the law required a clear repudiation of the trust to be brought to plaintiff's knowledge and attention before the applicable statute of limitations could begin to run in defendant's favor, under the rule laid down in Guyer et al. v. London, 187 Okla. 326, 102 P. 2d 875. See, also, 34 Am. Jur., Limitations of Actions, §175 et seq. The soundness of rules announced in the cited cases is unquestioned. However, it is to be observed that the applicability of these rules to the contentions of plaintiff rests upon the assumption that an effective trust relationship existed as between plaintiff and defendant over the entire period from the inception of their dealings.

It is to be noted that those cases, supra, which announce the rule that where legal title to realty is in one person and the real interest in another, the statute of limitations does not run between them until there is an unequivocal renunciation of the trust by the one holding legal title, generally are cases where the one claiming the right to the beneficial interest in the trust has nothing remaining to be done upon his part. This distinction is noted in the Dillon case, supra, and in the Reihl-Likowski case (33 Kan. 515, 6 P. 886) therein relied upon.

However, in the present case the evidence is entirely sufficient to establish that plaintiff procured defendant to enter into the transaction and loan his credit as a means of plaintiff negotiating an advantageous exchange of property. Upon the basis of defendant's credit plaintiff not only completed this transaction, but without defendant's knowledge or consent, continued to use defendant's credit (represented by the $4,000 note which plaintiff did not cancel as agreed) until called upon to settle the obligation and which plaintiff was then unable or unwilling to do.

Whatever responsibility existed between the parties prior to December 1, 1930, it is clear that their relation-

ship necessarily and by agreement changed at such time. The record is sufficient to support the trial court's finding that on that date the understanding and agreement of the parties was that defendant was executing this note for plaintiff's credit and plaintiff's interest in the farm was to stand as security, and when he failed to discharge the indebtedness within the prescribed time, it was his intention to surrender his interest in the property.

However, the trial court found, and the evidence supports such finding, that the parties agreed plaintiff was to pay off this note by December 1, 1933, and this was extended to December 1, 1934, by the parties. Since the lien existed against plaintiff's interest, the statute of limitations started running against plaintiff's rights upon discharge of the debt and same was barred at the time this action was brought.

This leaves for consideration plaintiff's third contention to the effect that a parol agreement to give a mortgage on realty, or to surrender or assign an equitable estate therein, is within the statute of frauds and void. Plaintiff cites 37 C. J. S., Frauds, Statute of, §81, and certain decisions which follow the rule that the statute of frauds embraces equitable estates, and thus plaintiff's equitable interest could not have been surrendered to defendant by parol.

This contention is without substantial merit. Defendant points out that this matter was considered and decided in Grayson v. Crawford, Adm'r, 189 Okla. 546, 119 P. 2d 42, wherein we held that an equitable lien may be created by parol agreement. In the body of the opinion is the following statement.

"Where the consideration for which the lien is given has been paid, so that the party asserting the lien has fully performed his part of the agreement and no rights of creditors or bona fide purchasers have intervened, the general rule is that an oral contract creat-

ing an equitable lien is not rendered unenforceable by the statute of frauds."

Also see authorities cited therein.

This rule was followed in the recent case of Douglass v. Douglass, 199 Okla. 519, 188 P. 2d 221.

The record supports the trial court's finding that plaintiff agreed his interest in the property would stand as security for the indebtedness created by the note defendant executed December 1, 1930. At that time defendant held the entire legal title, and likewise became the holder of plaintiff's equitable estate as security for this indebtedness. Under 12 O. S. 1941 §95 (6), the plaintiff had five years from the date of maturity to satisfy the debt and redeem his interest in the property, the maturity date of the note having been extended one year. This plaintiff failed to do. His action was filed December 3, 1943, more than five years after the note matured. His claim was barred by the five-year statute of limitations and the trial court was correct in so holding.

Judgment affirmed.

DAVISON, C.J., and WELCH, GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.