Louise Wells BECHLER, Lois Wells Robinson and Lavon Wells Winterringer, Appellants,

v.

M. W. KAYE, Administrator, with the Will Annexed of the Estate of Morris Schuman, deceased; and Davon Oil Company, a corporation, Appellees.

No. 4857.

United States Court of Appeals, Tenth Circuit.

Feb. 21, 1955.

Rehearing Denied April 13, 1955.

William J. Crowe, Oklahoma City, Okl. (James S. Twyford, Solon W. Smith, Oklahoma City, Okl.), for appellants.

O. C. Essman and Travis I. Milsten, Tulsa, Okl. (Harvey C. Carpenter, Tulsa, Okl., T. R. Benedum, Norman, Okl., David R. Milsten, James D. Johnston, Jacob L. Morehead, Tulsa, Okl.), Fred W. Dunlevy and V. P. Crowe, Oklahoma City, Okl., for appellees.

Before PHILLIPS, Chief Judge, and MURRAH, Circuit Judge, and RITTER, District Judge.

RITTER, District Judge.

Plaintiff, Kaye, Administrator of the estate of Morris Schuman, commenced this action in the Western District of Oklahoma against the heirs of Charles E. Wells, deceased, for the purpose of impressing a trust upon certain Oklahoma real property and for an accounting. The trial court determined the issues in favor of the plaintiff and defendants appeal.

Plaintiff claims that in 1939 Charles E. Wells and Morris Schuman entered into an agreement to purchase properties at tax sales and to divide equally all profits derived from their disposition. Parol evidence was introduced tending to show the existence and purported loss of the written agreement. The trial court found that the contract was in writing.

The testimony was to the effect that title to all property acquired was to be taken in the name of J. J. Schuman, the son of Morris Schuman, who was to act as trustee for Wells and Morris Schuman. Having had extensive experience in acquiring tax properties, Morris Schuman inspected, approved and selected the property interests. Wells, an attorney, received and collected all rentals and sales prices for property leased and sold, prepared all necessary instruments in reference to properties acquired and handled all books, records and accounts.

Wells agreed to advance the necessary funds to carry out the purposes of the partnership, taking a note from Morris and J. J. Schuman on January 2, 1941, for advances made by him to that date. As partial security for payment of the note, Morris Schuman pledged a diamond ring. The trial court found the note had been paid in full, and entered judgment for the return of the pledge. This portion of the judgment we affirm.

The complaint alleges that about July 19, 1941, J. J. Schuman became seriously ill and alleges because his survival was doubtful, Morris Schuman directed him to execute and deliver to Wells, as grantee, a quit-claim deed to certain partnership property and Wells agreed to hold the legal title as trustee for the benefit of the partnership. The trial court found that Wells filled in the description of the property with himself as grantee on a signed blank deed furnished by J. J. Schuman, without giving notice thereof to the Schumans.

Wells died testate July 14, 1946. Part of the property described in this deed, and specifically described in the complaint was included in the inventory of his estate and distributed to Appellants, daughters of Wells.

Plaintiff Morris Schuman died testate on March 1, 1948, and Kaye was appointed Administrator of his estate.

The suit seeks to impress a trust upon the property conveyed and an accounting of all rents and profits, together with a share in the royalties from an oil and gas lease on a parcel of the property from Davon Oil Corporation, also a party defendant.

Defendants claim beneficial ownership of the property, and that it was conveyed in settlement of a claim of Wells against the Schumans.

The trial court held that the transfer of the property to Wells was accomplished "under circumstances constituting him a trustee for Schuman" and therefore Appellants were under legal obligation to account to Appellee. It is unnecessary for us to pass upon this question because the claim is stale and, in any event, is barred.

■ Oklahoma substantive law controls this case.[1] And, this is also true of the defenses of laches and limitation.[2]

Appellants assert both limitations and laches. To the defense of laches the trial court held that "no person's rights have been prejudiced by delay in bringing action" and further stated: "Nor is the action barred by statute since no statute would begin to run until actual notice of an unauthorized use of the deed and a repudiation of the resulting trust arising therefrom."

We are unable to agree with these conclusions.

■■ There is no arbitrary rule for determining when a cause of action becomes stale. Delay alone is not laches; it must be a delay which works injury, prejudice or disadvantage to the defendant. In the final analysis each case must be determined upon its own circumstances and whether or not the doctrine of laches should be applied will be determined from the equities as shown by the evidence.[3]

The record in this case shows that five years had elapsed from the date of the deed before Wells' death; it was almost two years more before Morris Schuman died, and four years beyond that before this suit was brought. A total of eleven years passed between the date of the deed in question and the filing of this suit. Morris Schuman outlived Wells a year and nine months. On several occasions he talked to Wells' executor and never mentioned any claim to an interest in the property. All of the property in question was listed in the final decree in the Wells estate and in the estate tax return. There is no evidence inconsistent with the theory of a settlement between Wells and the Schumans. The events which brought about the action have become obscured by the passing of time. The truth surrounding the transactions in controversy cannot now be determined with any assurance. The evidence is seriously in conflict. It is extremely difficult to be sure that justice is being done. The only persons who knew the truth were dead at the time of the trial. The written contract between the partners was not produced at the trial. Ledger sheets and records concerning the most valuable tract of land in this suit could not be produced. One of the most serious disadvantages, and hence prejudice, from a long lapse of time is the loss of ability to prove the truth.

■ The statute of limitations began to run at the time of Wells' death. No cause of action arose or could have arisen during Wells' lifetime unless he repudiated the trust, because it was voluntary and continuing. However, upon his death Appellants became trustees by operation of law through the devolution to them of title to the partnership property. This is, of course, upon the assumption

1. Title 28 U.S.C.A. § 1652; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Hartford Accident & Indemnity Co. v. City of Sulphur, 10 Cir., 1941, 123 F.2d 566.

3. Stallings v. White, 1944, 194 Okl. 649, 153 P.2d 813; Luschen v. Stanton, 1943, 192 Okl. 454, 137 P.2d 567, 572; Dardenne v. Daniels, 1936, 176 Okl. 557, 56 P.2d 793; Parks v. Classen Co., 1932, 156 Okl. 43, 9 P.2d 432; Cassidy v. Gould, 1922, 86 Okl. 217, 208 P. 780; Morris v. Ross, 1954, 58 N.M. 379, 271 P.2d 823.

that plaintiff is correct in his claim that there was a trust. Hence the cause of action accrued immediately upon the death of Wells, and no repudiation of the trust by Appellants was necessary to start the statute in motion.[4]

■ In our view of the case it doesn't make any difference whether the statute of limitations or the doctrine of laches applies. The suit is barred in either event. The nature of the cause of action determines the applicable statute of limitations. When Appellee first commenced this suit (taking the view most favorable to him) it was founded upon the breach of fiduciary relationship growing out of the partnership agreement. Oklahoma considers this an action for relief "not hereinbefore provided for" and a five-year statute of limitations applies.[5] Six years elapsed after Wells' death before this suit was brought. Therefore under Appellee's original theory as to the nature of the action, it is barred by the five-year statute of limitations.

■ However, the primary nature of Appellee's cause of action was changed by the trial court's ruling on the amendment of the pleadings to conform to the proof. A careful examination of the record shows that the action, by amendment, became one primarily for a complete partnership or joint adventure accounting of all property, real or personal, in the hands of Wells from the date of the partnership agreement until his death.

■ Under the law of Oklahoma where an action is primarily for a partnership accounting in which title to realty belonging to the partnership stands in the name of one partner, it is considered an action on the contract of partnership itself, and the five or three-year statute of limitations controls, depending on whether the contract was written or oral.[6] In this case the agreement was in writing, thus falling under the five-year bar. The cause of action in such cases accrues upon the death of a partner, absent an earlier date.[7] Accordingly, upon the death of Wells the statute commenced to run and the six-year lapse before filing this suit is a complete bar to the action.

Historically, the statute of limitations was construed originally not to apply to suits in equity. Courts of equity applied it by analogy, it was said. Today statutes provide for a single form of action which in Oklahoma is called a "civil action".[8]

The statutes of limitations in the Oklahoma Code expressly govern all "civil actions".[9] So, perhaps, by force of the statute, limitations are as much applicable in equity as in law. At any rate, in suits of equitable cognizance the courts of Oklahoma have applied the statute of limitations either with or without consideration of laches.[10] Like-

4. Norton v. Bassett, 1908, 154 Cal. 411, 97 P. 894; Benoist v. Benoist, 1918, 178 Cal. 234, 172 P. 1109; Barritt v. Barritt, 1933, 132 Cal.App. 538, 23 P.2d 54; Steinberger v. Steinberger, 1943, 60 Cal. App.2d 116, 140 P.2d 31; Allen v. Burlingame, 1948, 165 Kan. 294, 194 P.2d 913.

5. Title 12 O.S.1951 § 95(6). Cassidy v. Gould, 1922, 86 Okl. 217, 208 P. 780; Royer v. Dobbins, 1925, 111 Okl. 156, 239 P. 157; Allen v. Garman, 1949, 201 Okl. 146, 202 P.2d 1073.

6. Title 12, O.S.1951 § 95(1, 2); Swartz v. Dennis, 1952, 208 Okl. 334, 255 P.2d 923; Wolfe v. North, 1938, 182 Okl. 520, 78 P.2d 674.

7. Swartz v. Dennis, supra.

8. Title 12 O.S.1951 § 10, provides: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

9. Title 12 O.S.1951 § 92, provides: "Civil actions can only be commenced within the periods prescribed in this article * * *."

10. A recent decision is Swartz v. Dennis, supra. See also, Cassidy v. Gould, supra; Wolfe v. North, supra; Royer v. Dobbins, supra; Allen v. Garman, supra; Neff v. Calk, 1947, 198 Okl. 379, 178 P.2d 624; Burckhalter v. Vann, 1916, 59 Okl. 114, 157 P. 1148.

wise other jurisdictions apply the statute of limitations to cases equitable in nature.[11]

Be that as it may, in any view of the case, the claim of plaintiff is barred. And, therefore, the judgment is reversed, except as to the return of the pledged ring.

PHILLIPS, J., concurs.

MURRAH, J., concurs in the result.

### On Petition for Rehearing.

RITTER, District Judge.

In his Petition for Rehearing Appellee argues that the Schumans had no cause of action to recover a half interest in the property in question and, therefore, the statute of limitations did not commence to run until the note was fully paid. This is for the reason, they claim, that the property, in addition to the pledged ring, was transferred to Wells as security for the payment of the note. Appellee's position is based on the rule set forth in Cohn v. Cohn, 1936, 7 Cal.2d 1, 59 P.2d 969, 973, which states: "But where the decedent held legal title as security and the debt remained unpaid at his death, there is no immediate duty to transfer the property, and in such cases the statute is not set in motion by the death of the holder of the legal title."

The rule of the Cohn case applies only if the real property Appellee now seeks was transferred to Wells as security for the payment of the note and the note was unpaid at Wells' death.

In our opinion the rule of Cohn v. Cohn is inapplicable here for two reasons.

I. The Cohn rule is inapplicable in this case because the property in question was not transferred to Wells at the time of the execution of the note when the ring was pledged, but was transferred at later dates, and not at all as security for the payment of the note. The reason for the transfer is contained in the trial court's finding (Tr. 22) which states:

"In 1941 Wells used one of the deeds which J. J. Schuman and wife had signed in blank and sent to him for use in selling partnership property to third persons, to convey the partnership property involved herein to himself. He gave no notice at any time of this fact to either of the Schumans * * *."

The finding does not disclose any intention of the parties to hold the property as a security. In fact, the Schumans had no notice at all of the transfer and therefore could not have intended the transfer as security for a debt. The evidence on this point is somewhat in conflict, but the finding is clearly supported by the evidence. In a prior finding (Tr. 22) the trial court states:

"A diamond ring was pledged by the Schumans to secure the note."

If the Cohn rule applies in this case it is limited to the ring alone, the sole security, and in that regard Appellee has received an affirmance of the lower court's judgment.

II. All references in the Petition for Rehearing to facts inconsistent with a settlement between Wells and the Schumans are to events which occurred sometime prior to Wells' death when the partnership was functioning. However, there is nothing inconsistent

11. For example, see Hotchkin v. Mc-Naught-Collins Improvement Co., 1918, 102 Wash. 161, 172 P. 864; Moss v. Moss, 1942, 20 Cal.2d 640, 128 P.2d 526, 529, 141 A.L.R. 1422. In Roos v. Texas Co., 5 Cir., 1942, 126 F.2d 767, 768, the court said: "That statutes of limitation are applicable to equitable causes in Texas is clear. Texas has a blended system of jurisprudence, the same court administering both legal and equitable causes, and it has long been settled that the statutes of limitation of the state are 'equally applicable, whether the relief sought be legal or equitable.'" See also 34 Am.Jur. Secs. 58, 59, pp. 54, 55, and the footnote cases cited.

222

with the theory of a settlement near the date of Wells' death under the facts appearing thereafter. These facts show: (1) Morris Schuman outlived Wells one year and nine months, was in Shawnee on several occasions after Wells' death, talked with the executor of Wells' estate and never mentioned the properties. (Tr. 141, 146, 147, 148); (2) All of the properties were listed in Wells' inventory and in the final decree (Tr. 139) and in his estate tax return. (Tr. 141); (3) J. J. Schuman went to Shawnee after Morris Schuman's death and talked with the executor of Wells' estate and never mentioned the property in issue. (Tr. 86, 87); (4) J. J. Schuman filed an action in an Oklahoma state court against the Wells estate on August 31, 1948, (Tr. 151) to recover property listed in the deed of July 19, 1941, (Tr. 152) and stated that he was fully cognizant of all the facts in this case in 1948 when the state court action was filed, had discussed the entire matter with his mother at that time, and the properties in question here were not mentioned nor was a demand made until the present action was filed April 17, 1952, almost four years later. (Tr. 206, 207); (5) Morris Schuman knew the facts in this case before he died (Tr. 207) and never mentioned the properties in question before his death.

Such facts indicate a settlement and in that event the note would have been fully discharged.

Appellee based the Petition for Rehearing on the ground that the statute of limitations had not expired when the action was filed in 1952. However, the equitable bar of laches is also present in this case. It is the prejudice caused by the delay in seeking relief after the action accrues which determines its application. Here there is great conflict in the evidence and much of the truth surrounding the controversy cannot be determined at this time with any degree of assurance. Appellants are placed at a disadvantage in attempting to prove events obscured through lapse of time.

Petitioner's claim that the court found the note was paid after Wells' death is so fallacious as to require no comment. Ordinary principles of grammar teach that the clause, "After Wells' death in 1946", in the court's sentence has no reference to payment of the note.

Rehearing denied.