**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHICKASAW TELEPHONE
COMPANY, an Oklahoma corporation,
and CHICKASAW CELLULAR
COMPANY, an Oklahoma corporation,

      Plaintiffs - Appellants,

    v.

SOUTHWESTERN BELL MOBILE
SYSTEMS, INC., a Delaware and
Virginia corporation,

      Defendant - Appellee.

No. 96-6357
(W.D. Oklahoma)
(D.C. No. CIV-96-902)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

Chickasaw Telephone Company and Chickasaw Cellular Company ("Chickasaw")

appeal the district court's order granting summary judgment in favor of defendant

Southwestern Bell Mobile Systems, Inc. ("Southwestern Bell"). The district court,

exercising diversity jurisdiction, determined that Chickasaw's claims were filed outside

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Oklahoma's applicable statutes of limitations for actions on written contracts and for breach of fiduciary duty, and therefore, that Southwestern Bell was entitled to judgment as a matter of law. We affirm.

## I. BACKGROUND

In June 1984, Chickasaw, Southwestern Bell, and two other parties entered a written agreement establishing the Oklahoma City SMSA Limited Partnership to fund, establish, and provide cellular telecommunications service to the Oklahoma City Standard Metropolitan Statistical Area (SMSA). Appellant's App. at 297-98 (Partnership Agreement). Southwestern Bell is the general partner and a limited partner, while Chickasaw is a limited partner. The partnership agreement includes a paragraph concerning the provision of cellular service to rural service areas (RSAs) adjoining the Oklahoma City SMSA. That paragraph provides:

> Nothing herein shall preclude the General Partner or an Affiliate thereof from providing Cellular Service independently from the Partnership in areas other than the SMSA and adjoining areas. Applications by the General Partner or an Affiliate thereof to provide Cellular Service in areas adjoining the SMSA shall be deemed to be made on behalf of the Partnership pursuant to the terms of Section 7.2(f).[1]

---

[1]Section 7.2(f) of the agreement grants the general partner authority to "apply to the FCC on behalf of the Partnership for permits and licenses to provide Cellular Service in counties contiguous to the SMSA."

Id. at 318, ¶ 8.8.  The partnership agreement also requires Southwestern Bell, as the

general partner, to act at all times in the partnership's best interest (section 8.1) and to

distribute partnership funds quarterly (section 6.3).

In a letter dated October 18, 1988, Southwestern Bell informed Chickasaw that it

would "file applications for the RSAs adjoining the Oklahoma service areas in its own

name and on its own behalf," not on behalf of the partnership.  Appellant's App. at 380.

On October 19, 1988, Southwestern Bell filed with the FCC its application to provide

cellular service in three RSAs adjoining the Oklahoma City SMSA (FCC application).

On the FCC application, Southwestern Bell disclosed its interest in the Oklahoma City

SMSA Limited Partnership, and its belief that it was not required to apply on the

partnership's behalf.  Id. at 22, 27-29.  Southwestern Bell subsequently received the right

to provide cellular service in these three RSAs.[2]

Chickasaw objected to Southwestern Bell's FCC application on its own behalf,

insisting that it had "carry-on" rights to the RSAs.[3]  Counsel for Chickasaw sent

---

[2]Neither the parties nor the record indicate when Southwestern Bell received the right to provide cellular services to these RSAs.  However, in a letter to Southwestern Bell dated October 2, 1990, counsel for Chickasaw stated, "we understand that [Southwestern Bell] did file applications and subsequently obtained interests in markets contiguous to Oklahoma City."  Id. at 386.  Thus, it appears from this correspondence that Southwestern Bell received the rights to these RSAs, and Chickasaw was aware of that fact, at least by October 2, 1990.

[3]Carry-on rights refer simply to "the rights granted to the limited partners . . . to participate in the provision of cellular service in areas adjoining the Oklahoma City MSA."  Appellant's App. at 287.

Southwestern Bell four letters in October 1988, September 1989, October 1990, and July 1991, all asserting that the FCC application should "be deemed to be made on behalf of the Partnership." Id. at 381-88. The record contains no written responses to these letters from Southwestern Bell. However, Chickasaw Holding Company's Executive Vice President alleged, in an affidavit, that from 1988 to at least November 1991, there were ongoing negotiations concerning the unresolved issue of Chickasaw's carry-on rights in the RSAs, and that not until a November 7, 1991, meeting did Southwestern Bell communicate its intention not to honor Chickasaw's asserted rights. Appellant's App. at 287, 290.

On June 7, 1996, Chickasaw filed its complaint alleging that Southwestern Bell "has breached, and continues to breach," both the partnership agreement and its fiduciary duty to Chickasaw, by refusing to acknowledge that its FCC applications were on behalf of the partnership, and by refusing to share the benefits of those applications with Chickasaw. Id. at 3, 4. In response, Southwestern Bell filed a motion for summary judgment, arguing that Chickasaw's claims were barred by the applicable five-year statutes of limitations, an affirmative defense which Southwestern Bell raised in its answer. Chickasaw responded that Southwestern Bell was in continuous breach of the agreement and its fiduciary duty, so the statutes of limitations do not bar Chickasaw's claims.

The district court held that Chickasaw's claims were barred by the statutes of limitations because they accrued in October 1988, or at the latest on October 2, 1990, "when Chickasaw's own correspondence reflects it was aware of the claims it is asserting in this case." Id. at 401 (Summary Judgment Order). The court also rejected "Chickasaw's attempt to escape the limitations bar by arguing a 'continuing wrong,'" id., agreeing with Southwestern Bell that the act of filing the FCC application constituted the breach, while subsequent injuries are merely damages from that breach.

On appeal, Chickasaw argues that the district court erred in granting summary judgment because it "failed to recognize the uncontroverted evidence of the continuing nature of Southwestern Bell's breaches." Appellant's Br. at 10. Alternatively, Chickasaw argues that even if Southwestern Bell's breaches are not continuing, Chickasaw's claims are not barred because Southwestern Bell did not repudiate its obligations and fiduciary duties under the partnership agreement until November 7, 1991, within the five-year limitations period. Id. at 20.

## II. DISCUSSION

We review an order granting summary judgment de novo, Yoder v. Honeywell, Inc., 104 F.3d 1215, 1219 (10th Cir. 1997), applying the same standard as the district court, i.e., summary judgment is appropriate when the court finds that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)). We may affirm on grounds not relied upon by the district court. United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

The primary issues presented on appeal are whether, under the Oklahoma City SMSA Limited Partnership agreement, Southwestern Bell's actions constituted: (1) continuing breaches of its written contractual obligations; and (2) continuous tortious breaches of its fiduciary duties, thereby bringing Chickasaw's claims within the statutes of limitations. In order to determine whether the Oklahoma statutes of limitations bar Chickasaw's claims in this diversity action, we must determine when the claims accrued. In Oklahoma, "[t]he temporal point of a claim's accrual is dependent upon (a) the nature of the right in litigation and (b) when the plaintiff could have first effectively maintained the action." Resolution Trust Corp. v. Greer, 911 P.2d 257, 261 (Okla. 1995).

The parties do not dispute the applicable statutes of limitations. In Oklahoma, a civil action "upon any contract, agreement, or promise in writing," must be brought within five years "after the cause of action shall have accrued, and not afterwards." Okla. Stat. tit. 12, § 95(1). A tort action for breach of fiduciary duty arising out of a contract

falls under the five-year catchall statute of limitations in Okla. Stat. tit. 12, § 95(9).[4]

Thus, each of Chickasaw's claims is governed by a five-year statute of limitations.

The parties dispute, however, the application of Oklahoma's general rule that a statute of limitations does not commence to run until a plaintiff has a legal right to sue, i.e., until the plaintiff can effectively maintain an action. See Greer, 911 P.2d at 261; Allied Fidelity Ins. Co. v. Bank of Oklahoma, N.A., 894 P.2d 1101, 1103 (Okla. 1995); Samuel Roberts Noble Foundation, Inc. v. Vick, 840 P.2d 619, 622 (Okla. 1992). While Oklahoma courts have considered specific accrual standards for certain contract[5] and tort[6]

---

[4]The district court held, and the parties agree, that Chickasaw's breach of fiduciary duty claim is a tort action arising out of a contract. This action is therefore governed by the catchall statute of limitation in section 95(9) which provides: "An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued." See Bechler v. Kaye, 222 F.2d 216, 220 (10th Cir. 1955) (applying Oklahoma catchall statute of limitations to "breach of fiduciary relationship growing out of the partnership agreement"). We also note that effective November 1, 1996, the Oklahoma legislature re-numbered § 95(9) as § 95(10). However, because Chickasaw filed its action on June 7, 1996, we refer to the pre-amendment numbering.

[5]See, e.g., Vick, 840 P.2d at 622 (describing general accrual rule for construction contracts as "the limitations period does not begin until the work is completed"); Kiamichi Elec. Coop. v. Underwood, 842 P.2d 358, 359 (Okla. Ct. App. 1992) (stating that each monthly due date in an installment contract constitutes a new cause of action, and the statute of limitations begins to run with each new due date).

[6]See, e.g., Lovelace v. Keohane, 831 P.2d 624, 628 (Okla. 1992) (holding victim's cause of action for sexual misconduct against priest accrued at end of each alleged sexual encounter, and not upon priest's admission of the sexual misconduct); Reeves v. Agee, 769 P.2d 745, 757 (Okla. 1989) (stating statute of limitations on wrongful prosecution claim began to run when underlying claim was resolved in plaintiff's favor).

actions, the parties do not cite, nor have we found, any Oklahoma cases directly

addressing accrual of the type of contract and tort claims presented in this case.


### A.   Breach of Contract

We think it clear under Oklahoma law that a breach of the partnership agreement

occurred when Southwestern Bell filed the FCC application on its own behalf,

specifically stating that the limited partnership had no interest in the application.  "A

breach of contract is a material failure of performance of a duty arising under or imposed

by agreement."  Lewis v. Farmers Ins. Co., 681 P.2d 67, 69 (Okla. 1983).  The

partnership agreement stated that applications to provide cellular services to RSAs

adjoining the Oklahoma City SMSA "shall be deemed to be filed on behalf of the

partnership."  Southwestern Bell materially failed to perform this duty, making it clear

both to the FCC and to Chickasaw that its application was filed on its own behalf.  Thus,

Chickasaw could have maintained its action, and the statute of limitations began to run,

once Southwestern Bell filed its FCC application on October 19, 1988.  Because

Chickasaw did not file this action until June 7, 1996, the district court correctly held its

breach of contract claim barred by the five-year statute of limitations in Okla. Stat. tit. 12,

§ 95(1).

Chickasaw argues that Southwestern Bell "continuously, on a daily basis, breaches

Sections 6.3, 8.1 and 8.8 of the [partnership agreement]," so Chickasaw's "breach of

contract claim is not barred by the applicable statute of limitations." Appellant's Br. at 16. Chickasaw relies primarily on our decision in Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co., 664 F.2d 252 (10th Cir. 1981), to argue that Southwestern Bell has continuing contractual obligations to: (1) acknowledge that its applications were made on behalf of the partnership, and (2) distribute the benefits from the RSAs to the partnership.[7]

While this court and the Oklahoma Supreme Court[8] have recognized that a new cause of action may accrue each time a defendant breaches a continuing contract, this is not such a contract. In Paul Holt Drilling, an insurer denied its insureds policy coverage and any obligation to defend them against suits arising from the blowout of an oil well. We held that the insurer's continued refusal to defend its insureds constituted a series of breaches of its continuing duty to defend. Paul Holt Drilling, 664 F.2d at 256. We also explained that continuing contracts are those that require continuing performance for some period of time, and are capable of a series of partial breaches for which "'a separate action is maintainable, just as in the case of an "installment" contract.'" Id. at 255-56 (quoting 4 A. Corbin, Corbin on Contracts § 956, at 841 (1951)).

---

[7]Chickasaw correctly notes that its contract and fiduciary duty claims should be addressed separately. Indeed, while the district court simply rejected "Chickasaw's attempt to escape the limitations bar by arguing a 'continuing wrong,'" we note that the continuing wrong doctrine is a tort concept which does not apply to contract actions. See 1 Calvin W. Corman, Limitations of Actions § 7.2.1, at 487 (1991).

[8]See, e.g., Western Natural Gas Co. v. Cities Serv. Gas Co., 507 P.2d 1236, 1242 (Okla. 1972) (holding action not barred by statute of limitations where defendant made continuing violations of its continuing duty to disclose facts relevant to Federal Power Commission's decision to grant defendant's application to abandon gas service).

In this case, the relevant contract provisions clearly state that applications for adjoining RSAs will be deemed to be made on behalf of the partnership, and require Southwestern Bell to make such applications in the partnership's best interest. The breach caused by the FCC application occurred at a fixed point in time for a fixed set of RSAs, and the relevant contract terms did not require the kind of continuing performance for that FCC application described in Paul Holt Drilling or in the more traditional installment contract. See, e.g., Johnson v. Kansas Public Employees Retirement System, No. 76, 374, 1997 WL 186956, *5-6 (Kan. April 18, 1997) (rejecting plaintiffs' arguments that employee benefit contract was continuing contract which was breached each time employees received underpaid benefit check). Any injury allegedly suffered by Chickasaw after this breach constitutes damages flowing from the breach, not continuing breaches.[9] See, e.g., Hinson v. United Financial Servs., Inc., 473 S.E.2d 382, 475 (N.C. Ct. App. 1996) (holding late notice mailed to debtor in rescission of contract claim was "at worst, an ill effect of the original wrong and is not a wrong in and of itself"); see also 1 Calvin W. Corman, Limitations on Actions § 7.2.1, at 485-86 (1991) (stating statute of limitations begins to run at the time of breach, even when the extent of actual damages is not then ascertainable).

---

[9]These injuries may include Southwestern Bell's failure to distribute profits from the RSAs to the limited partnership, as Chickasaw urges is required by section 6.3 of the partnership agreement.

Our analysis is also consistent with a recent opinion from the Delaware Supreme Court concerning breach of a similar limited partnership agreement to provide cellular telecommunications service. See United States Cellular Inv. Co. of Allentown v. Bell Atlantic Mobile Systems, Inc., 677 A.2d 497, 503 (Del. 1996).[10] In United States Cellular, the Delaware court held that the statute of limitations for breach of a limited partnership agreement began to run on the date Bell Atlantic, the general partner, filed an FCC application on its own behalf to provide cellular services to two RSAs adjacent to an SMSA in Allentown, New Jersey.[11] Specifically, the court found Bell Atlantic's filing breached the agreement because either "by acting on its own behalf, this action represents an attempt by [Bell Atlantic], the general partner, to compete with the partnership contrary to § 8.8 [of the partnership agreement]," or "even if [Bell Atlantic] was acting for the Partnership or was deemed to have made the application on behalf of the Partnership, [Bell Atlantic] still violated the terms of the Agreement since it did not disclose the Partnership's interest on the application." Id. Here, Southwestern Bell left no uncertainty on its FCC application that it was acting on its own behalf and not for the partnership. Therefore, as in U.S. Cellular, the application was a breach clearly involving an "attempt to compete with the partnership contrary to § 8.8."

_____

[10]The district court relied almost exclusively on United States Cellular in its order.

[11]The partnership agreement in United States Cellular contained a paragraph 8.8, identical to paragraph 8.8 in this case, which provided that applications for cellular service in RSAs adjoining the SMSA "shall be deemed to be made on behalf of the Partnership." Id. at 499 n.3.

-11-

### B.    *Tortious Breach of Fiduciary Duty*

Chickasaw argues that its breach of fiduciary duty claim is not barred because Southwestern Bell continuously breaches its fiduciary duty to Chickasaw. Appellant's Br. at 15. Chickasaw supports this argument with cases concerning slander of title[12] and misappropriation of trade secrets,[13] arguing that "all are based on continuous and repeated wrongful activity." Id.

Chickasaw correctly notes that "'where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.'" Appellant's Reply Br. at 14 (citing Tiberi v. CIGNA Corp., 89 F.3d 1423, 1430-31 (10th Cir. 1996) (quoting 54 C.J.S. Limitations of Actions § 177 (1987)). However, this case does not involve a continuing tort. Chickasaw could have maintained its tort action when Southwestern Bell filed its public FCC application on October 19, 1988, or at least when Southwestern Bell received the rights to provide service to these RSAs (sometime prior to October 2, 1990). Chickasaw's asserted rights were then injured, it was aware of the alleged injury, and nothing prevented it from pursuing a cause of action. See Tiberi, 89 F.3d at 1431 (stating continuing wrong doctrine cannot be applied where the plaintiff's injury is definite and discoverable, and nothing prevented the

---

[12]See Appellant's Br. at 14 (citing Young v. Young, 709 P.2d 1254, 1259 (Wyo. 1985); Polin v. Dun & Bradstreet, Inc., 511 F.2d 875, 878 (10th Cir. 1975); New England Oil & Pipe Line Co. v. Rogers, 7 P.2d 638, 642 (Okla. 1931)).

[13]See Appellant's Br. at 15 (citing Telex Corp. v. International Bus. Machs. Corp., 367 F. Supp. 258, 261 (N.D. Okla. 1973)).

plaintiff from coming forward to seek redress). Because Chickasaw brought this action more than five years later than either date, the district court properly held this tort claim barred by the statute of limitations in Okla. Stat. tit. 12, § 95(9). Subsequent alleged injuries to Chickasaw constitute damages from the original breach of fiduciary duty, not continuing harms from which new causes of action accrue. See, e.g., Nesovic v. United States, 71 F.3d 776 (9th Cir. 1995) (rejecting plaintiff's assertion that IRS committed continuing wrong by pursuing tax lien because tax assessment was the single wrongful act, while subsequent injuries were ill effects from original violation); Daboub v. Gibbons, 42 F.3d 285, 290-91 (5th Cir. 1995) (determining continued sales of and profits from alleged wrongful copyright "elucidates a concept of continuing damages, rather than a continuing tort").

Moreover, the authorities relied upon by Chickasaw are distinguishable from the present case. Tiberi is a fraud case involving a New Mexico contract under which the plaintiffs agreed to sell only the defendant's insurance, and suffered significant losses when the defendant abandoned the insurance program. In Tiberi, we stated that the continuing wrong doctrine may be applied to the fraud claims because the defendant: (1) assured the plaintiffs of its continuing support for the insurance program, (2) never informed the plaintiffs of its reservations concerning the program, and (3) subsequently called an abrupt end to the program, so it was "reasonable to infer that [defendant] held [plaintiff] to the . . . agreement while at the same time taking measures to dissolve it."

-13-

Tiberi, 89 F.3d at 1431. In the present case, the record shows that Southwestern Bell filed the FCC application on its own behalf and notified Chickasaw of that fact. And, Chickasaw does not argue that Southwestern Bell prevented it from bringing an action.

The misappropriation of trade secrets and title slander cases are also distinguishable because they uniformly involve continued tortious conduct, rather than damages flowing from an initial tortious act. See Young, 709 P.2d at 1259 (applying continuing tort theory narrowly to repeated misappropriation of intermittent royalty payments); Telex, 367 F. Supp. at 359-60 (applying continuing wrong theory to IBM's counterclaim where plaintiffs continued to misuse IBM's trade secrets and programs); Rogers, 7 P.2d at 642 (holding slander of title action does not accrue until defendant ceases to make adverse claims against title).

### C.     Effect of Alleged Negotiations Concerning the RSAs

Alternatively, Chickasaw argues that even if we determine no continuing breaches or wrongs existed, the statute of limitations did not begin to run until November 7, 1991, the first time, according to Chickasaw, that Southwestern Bell "unequivocally communicated its intent to repudiate its obligations under the Partnership Agreement." Appellant's Br. at 23. Chickasaw argues that Southwestern Bell did not make a complete anticipatory repudiation of the contract in October 1988, because its actions and

representations indicated that the issue of Chickasaw's carry-on rights remained unresolved.[14]

We have determined that Southwestern Bell breached the agreement when it filed its FCC application, and breached its fiduciary duty either when it filed its FCC application or received the rights to the RSAs.[15] Therefore, this is not a case where Southwestern Bell made an anticipatory repudiation of the agreement with statements or actions, and Chickasaw's arguments concerning anticipatory repudiation are misplaced. Compare Lewis, 681 P.2d at 69 ("A breach of contract is a material failure of performance of a duty arising under or imposed by agreement.") with Restatement (Second) of Contracts § 250 (1981) (defining repudiation as a statement that an obligor will commit a breach, or an act which renders an obligor unable or apparently unable to perform without such a breach).

For the foregoing reasons, we AFFIRM the judgment of the district court, granting summary judgment against Chickasaw because its claims are barred by the applicable Oklahoma statutes of limitations.

ENTERED FOR THE COURT

---

[14]Chickasaw supports this allegation with its Executive Vice President's affidavit. See Appellant's App. at 289-90.

[15]Chickasaw did not plead, focus on the necessary factors, or otherwise pursue a claim that the statute of limitations was tolled under the doctrine of equitable estoppel. See, e.g., Sanchez v. City of Sand Springs, 789 P.2d 240, 241-42 (Okla. 1990) (discussing equitable estoppel where statute of limitations is tolled because defendant causes plaintiff to delay filing action).

Stephen H. Anderson
Circuit Judge